Rittenhouse & Embree Co., James H. Stevens, Edwin J. Sherbrook, C. L. Webster & Son et al., v. William H. Barry et al.

1. CHANCERY PRACTICE—*Objections to the Master's Report Must be Specific.*—Unless an objection to the master's report is made specific and points out the particular grounds of objection with clearness and certainty, so as to call attention to the particular point, it is insufficient and will be disregarded.

2. MECHANIC'S LIENS—*Under Verbal Contracts.*—When work is done or materials are furnished under a verbal contract, a lien can be had under the mechanic's lien law when the contract provides that the work shall be done and the materials shall be furnished within one year from the making of the contract, and final payment therefor is to be made within the same time.

3. SAME—*What is an Oral Contract.*—A contract partly in writing and partly oral, is in legal effect an oral contract.

4. SAME—*Construction of Contracts for.*—It is not necessary in the construction of a contract in order to maintain a mechanic's lien under it, that a specific day or date should be fixed for the completion of the work or final payment made, but only that it appear that the time for the completion of the work is not beyond three years from the date of the contract, and that of final payment not beyond one year from the time stipulated for the completion of the work.

5. CONTRACTS—*To be Construed in the Light of Surrounding Circumstances.*—In the construction of contracts, courts will endeavor to determine what was the real intention of the parties, and the contract will be construed in the light of the circumstances surrounding the parties at the time it was made and of the purposes they had in view, and for the purpose of determining what was such intention, the acts of the parties themselves will also be considered.

Bill for a Mechanic's Lien.—Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the March term, 1901. Reversed and remanded with directions. Opinion filed December 12, 1901.

**Statement by the Court.**—One of the appellants, Rittenhouse & Embree Co., a corporation, filed its bill in the

Circuit Court, whereby it sought a mechanic's lien on six flat buildings and the real estate on which they were situated, for certain lumber furnished to Stevens & Sherbrook, original contractors for doing the carpenter and mill work on said buildings, under a verbal c ntract made about May 9, 1896, set out in the bill. The bill alleges, among other things, that William H. Barry and James E. Fellows were the owners in fee of the premises at the time the contracts for the erection of the buildings and furnishing the lumber were made by Stevens & Sherbrook and the Rittenhouse & Embree Co.; that the record title was in said Barry until May 14, 1896, when it was conveyed to Ebenezer Ryder.

On May 6, 1896, Barry & Fellows entered into a written contract with C. L. Webster & Son to furnish the material therefor and do the mason work on said buildings for $4,800, who, after doing the work and furnishing the material under their contract, sold and assigned to Frank B. Pease, as trustee for the use and benefit of the Labahn Brick Co. and others, all the right, title and interest of Webster & Son in and to their claim under their said contract, and to a mechanic's lien. Webster & Son, said Pease, and the beneficiaries under said assignment of the claim and lien of Webster & Son, filed their cross-bill, seeking a lien for a balance due under the contract of Webster & Son of $3,584 and interest, and making numerous parties defendants thereto, including the said Barry, Fellows, Ryder, Rittenhouse & Embree Co., Stevens, Sherbrook, and Bayley, as trustee under six certain trust deeds on said real estate, dated May 11, 1896, made by said Barry to secure certain notes for a building loan of $24,000 on said premises, made for the purpose of erecting the said buildings.

Answers were filed to both the original and cross-bill by all the defendants thereto, respectively, who have any interest in this appeal, as well as others, to which answers, respectively, replications were filed. Among other answers to the original bill was one by Stevens & Sherbrook, in which, among other things, after stating the title to said

real estate, they set up a verbal contract between them and said Barry & Fellows for furnishing materials and doing the carpenter work on said buildings for the sum of $6,000, and asked that they be allowed a lien on said buildings and real estate for a balance of $4,000 which they claimed to be due them thereon.

· Subsequently the owners of the notes secured by said trust deeds to Bayley were made parties to the bill and cross-bill, answered the same, claiming that their liens on said premises by virtue of said notes and trust deeds were prior and superior to the liens claimed by the complainant, cross-complainant, or any of the defendants to said bill or cross-bill.

After the issues were made, the cause was referred to a master to take proof and report the same with his conclusions thereon. While the cause was pending before the master his term of office expired, when an additional order of reference was made, referring the cause to said master as special commissioner, with like directions. The commissioner, having completed the evidence, reported the same, together with his conclusions, which was filed on the 27th day of January, 1900, finding in favor of mechanic's liens for each of the appellants and several other persons, whose claims are not necessary to be considered on this appeal. The substance of the commissioner's report, so far as necessary to be stated, appears in the opinion.

Objections were made before the master by the defendants, the owners of the notes and trust deeds, and Bayley, the trustee, as follows :

" First. That the master has found that Barry & Fellows contracted verbally with Stevens & Sherbrook for the carpenter and mill work on May 6, 1896, and that the date of completion and final payment were not definitely fixed; whereas the contract shows that the contract was partly verbal and partly written, and that completion and final payment were fixed by terms of the contract at September 1, 1896.

" Second. That Stevens & Sherbrook were delayed prior to September 1, 1896, by other contractors.

" Third. That said work and material was furnished

from time to time up to October 13, 1896, which was the date of the last delivery and performance of last work, whereas said work was substantially completed on or about September 3, 1896.

"Fourth. Objects to finding that Stevens & Sherbrook filed lien statements substantially in compliance with statute, which said finding is contrary to the evidence, as shown by the statement of claim for lien and indorsements thereon, returned with the report.

"Fifth. Objects to finding that Stevens & Sherbrook are entitled to a lien for $4,000, and also that there is a variance between the proofs and answer of said Stevens & Sherbrook in that said answer sets forth a verbal contract, when the evidence shows that said contract was partly verbal and partly written, and that said answer states that no time was agreed for completion, whereas proofs show the contract was completed by September 1, 1896; also that said statement for claim for lien was not filed within the time prescribed by statute.

"Sixth. Objects to the finding that Rittenhouse & Embree Company is entitled to lien for $1,900.97, with interest, which said finding is contrary to the law and the evidence: First, because there is no proof that the date of the last delivery of material by said Rittenhouse & Embree Co. was August 8, 1896, as found by the master; second, there is no evidence that notice of claim for lien was served by Rittenhouse & Embree Co. on Barry & Fellows within sixty days after the last material was furnished; third, because there is a variance between the bill and the proofs, in that the bill alleges that the contract between Stevens & Sherbrook and Barry & Fellows was not written, whereas it appears said contract was partly verbal and partly in writing; also that the bill alleges no time was fixed by the contract for the completion of the work, whereas it appears from the evidence that said work was to be completed by September 1, 1896.

"Seventh. That said Rittenhouse & Embree Co. are entitled to a lien prior to that of said Bayley, whereas said lien, if any, took effect from October 7, 1896.

"Eighth. That the master has found that Frank B. Pease, trustee, is entitled to a lien for the sum of $3,284, which finding is contrary to the law and evidence for the reason that the statement for lien is filed by said Webster & Son, assignor of said Pease, and is not in accordance with the statute."

Ninth to fifteenth, eighteenth and twentieth objections inclusive relate to claims not in question on this appeal.

"Sixteenth. That the master has found that the trust deeds to said Bayley are prior liens on and after May 14, 1896, to the alleged mechanic's liens.

"Seventeenth. That the master has found that the liens of Rittenhouse & Embree Company, Frank B. Pease, trustee, and Stevens & Sherbrook, are paramount to the liens of said trust deeds.

"Nineteenth. That the master found that if any one or more of said lots and houses does not sell for sufficient to satisfy the liens and costs, the deficiency should be paid out of the surplus proceeds of the sale of any of the other houses and lots.

"Twenty-one. The mechanic's lien statute is unconstitutional and void, so far as it affects these objectors."

The objections before the master were ordered to stand as exceptions, on a hearing of which before the chancellor the same were sustained, and the court found that said Rittenhouse & Embree Co., the cross-complainants in the cross-bill, and the defendants, Stevens & Sherbrook, and others who have not appealed, were not, nor were any or either of them, entitled to a mechanic's lien on said premises or any part thereof, and the same were disallowed and said premises decreed to be free and clear of and from each and all said claims for liens, and that the original and cross-bills be and the same were thereby dismissed for want of equity. The court also, by the decree, fixed the fees of the master and special commissioner at $500, and apportioned the same between the different lien claimants, to be paid by them respectively as follows: Rittenhouse & Embree Co., $90.45; Stevens & Sherbrook, $95.40; Webster & Son, $151.10, and to other claimants different amounts not now questioned.

From this decree Rittenhouse & Embree Co., Stevens & Sherbrook and the complainants in the cross-bill have prosecuted this appeal.

MURPHY & ALLEE, ATWOOD & PEASE and JESSE COX, attorneys for appellants.

BAYLEY & WEBSTER, solicitors for said appellees.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

First, as to the claim of Stevens & Sherbrook, the original contractors for furnishing the material therefor, and doing the carpenter work. It appears from the findings of the commissioner, among other things, in substance, that a verbal contract dated May 6, 1896, between Stevens & Sherbrook and Barry & Fellows was made on that day, for furnishing the material and doing the carpenter and mill work for the erection of six buildings on premises owned by Barry & Fellows, the title to which was in Barry; that by the terms of said contract the dates for its completion and for final payment were not absolutely fixed, but the work was to be done and the material therefor was to be furnished in a reasonable time, to wit, within one year from the date of the contract, and the payments therefor were to be made as the work progressed, and the final payment was to be made at the date of the completion of the contract; that said contract was practically completed on the 3d day of September, 1896, when, by reason of the failure of Barry & Fellows to pay as the work progressed, the work was suspended to the following October 11th, when it was resumed and completed October 13, 1896, which was the date of the last delivery of materials and the date of the last work done; that Stevens & Sherbrook completed said contract according to its intent, though they were delayed by other contractors prior to September 1, 1896, and on January 22, 1897, filed with the clerk of the Circuit Court a claim for a lien, which was substantially in conformity with the statute in that regard; that the said buildings were under one roof, attached, and had a continuous front wall, and that Stevens & Sherbrook were entitled to a lien for the balance due them under their said contract, which was found to be $4,000, and interest from October 13, 1896, together with solicitor's fees of $5 for filing their claim for lien, and ten per cent of the

amount found due as provided by the statute, amounting in all, after deducting therefrom the amount of the claim of Rittenhouse & Embree Co., to the sum of $2,650.60.

A careful examination of the evidence shows that a contract was made, as found by the commissioner, though it was partly verbal and partly written, and it was objected before the master and excepted to before the chancellor, that the master found that the contract was verbal. There is no merit in the objection. When a contract is partly verbal and partly in writing, it is as a whole in law an oral or verbal contract. Murphy v. Cicero Lumber Co., 97 Ill. App. 510, and R. P., etc., Ass'n v. Loomis, 142 Ill. 560.

In the last case the court say:

"A contract partly in writing and partly oral is in legal effect an oral contract."

In this case the evidence shows the contract to have been largely oral, very few of its terms being in writing.

The findings of the commissioner that Stevens & Sherbrook were delayed prior to September 1, 1896, by other contractors, that the last work was done and the last material furnished on October 13, 1896, though the work was substantially completed by September 3, 1896, are all sustained by the evidence, and the objections to the master's report in these respects were, in our opinion, wrongfully sustained by the chancellor. The same is true as to each and all of the objections and exceptions as to findings of fact by the master as to this claim for lien, except the finding that Stevens & Sherbrook filed with the clerk of the Circuit Court their claim for lien substantially in conformity with the statute. As to this finding, this court, as well as the chancellor, is precluded from examining the sufficiency of the evidence to sustain the report, because the objection before the commissioner and the exception before the chancellor to the report in that regard, is not sufficiently specific. The objection on this point before the commissioner (which was made an exception before the chancellor) does not point out in what respect, if any, the lien statement failed to comply with the statute. Unless

an objection is made specific—points out the particular ground of objection with clearness and certainty, so as to call attention to the particular point, it is insufficient and will be disregarded.   Bishop v. Blair, 90 Ill. App. 64–81; Thornton v. Commonwealth L. & B. Ass'n, 181 Ill. 456, and cases cited.

An extended argument is made by the learned counsel for appellees as to the sufficiency, under the statute, of the statement of claim for lien and as to the time within which it was filed; but so far as it relates to the sufficiency of the statement, it is answered by the insufficiency of the objection and exception to the commissioner's report to raise these questions.   So far as concerns the filing of the claim for lien, the evidence shows that it was filed within the time prescribed by the statute, viz., within four months after the last payment was to become due and payable.

It is also argued that because the contract was a verbal one, and the work was to be completed within a reasonable time, to wit, within one year from May 6, 1896, under the authority of Freeman v. Rinaker, 185 Ill. 179, and Kelley v. Northern Trust Co., 190 Ill. 401, there could be no lien. We think the contention is untenable.   In both these cases the court had under consideration a written contract, in which there was no provision as to the time within which the work was to be performed or the money paid—not a verbal one, as is the case here, in which these times are fixed.   Section 6 of the lien statute, in so far as it relates to liens under verbal contracts, is as follows:

"If the work is done or materials are furnished under a verbal contract, no lien shall be had by virtue of this act unless the work shall be done or materials furnished within one year from the date of the contract, and final payment therefor is to be made within such time."

It is apparent from this language that it is sufficient to give a lien under a verbal contract that it shall provide that the work shall be done or materials shall be furnished within one year from the date of the contract, and that final payment is therein provided to be made within the same time.

Indeed, if the statute be read omitting the last clause, it might be well contended that a lien would be given under a verbal contract, if the work should, as matter of fact, be done or materials be furnished under it within one year from the date of the contract, although it contained no provision in that respect. When, however, the last clause of this paragraph of the statute is read in connection with the remainder of the paragraph, we think the fair intendment is that the contract by its terms should provide, in order that a lien may be had under it, that the work should be done or materials be furnished within one year from its date, and the final payment provided to be made within the same time. The claim of appellees' counsel that the evidence does not support the finding of the commissioner that the work was to be done and the materials furnished within one year from the date of the contract, and that the final payment was to be made within the same time, is untenable. The evidence shows, as we think, that the commissioner was justified in the finding.

Appellees, in their objection and exceptions, assert that the evidence shows the completion of the work and final payment were fixed by the contract at September 1, 1896, and that the work was substantially completed on or about September 3, 1896. They will not now be permitted to take a different position. There is no conflict in the evidence but that the work was substantially completed on September 3, 1896, and that it was fully completed and all the materials furnished by the following October 13th, and that the delay in completely performing the contract was caused by other contractors—that it was not the fault of Stevens & Sherbrook.

It is also claimed that there was a variance between the proofs and the answer of Stevens & Sherbrook, in that the answer sets forth a verbal contract, while the evidence shows that it was partly verbal and partly written. What we have above said as to the nature of the contract sufficiently disposes of this contention. The claim that there was a variance between the answer of Stevens & Sherbrook

and the evidence as to the time agreed for the completion of the work, is not well founded.   The answer and the proof in this regard substantially agree.

As to this claim, we are of opinion, upon the whole evidence, that the exceptions to the commissioner's report should have been overruled and the report confirmed.

### CLAIM OF RITTENHOUSE & EMBREE CO.

As to this claim the commissioner finds, among other things not here material to be stated, that the company entered into a verbal contract with Stevens & Sherbrook on May 9, 1896, to furnish the lumber needed for the erection of the six buildings which the firm had undertaken to build for Barry & Fellows; that the lumber was to be delivered within a reasonable time, to wit, within one year from the date of the contract, and was to be paid for as the building progressed, the final payment to be made at the date of the last delivery; that the contract was fully performed by the company; the material was used in the buildings; that the date of the first delivery was May 9th, and the date of the last delivery was August 8, 1896; that the prices were the reasonable cash market prices at the time of delivery, and there was due to the company $1,900.97 therefor; that the account was approved by both Barry & Fellows and Stevens & Sherbrook; that a lien notice was filed in the office of the clerk of the Circuit Court, according to the statute; and that there was due to the company the said amount of its claim, with interest from August 8, 1896; also that out of the amount found due to Stevens & Sherbrook there should be deducted the said amount due to the company, with interest; that the company was entitled to ten per cent of its claim for solicitor's fees, which should be deducted from the solicitor's fees of Stevens & Sherbrook: that the amount due Rittenhouse & Embree Co., including interest and their solicitor's fees, was $2,430.89.

Substantially the same objections are made and urged against this claim that were made against the claim of Stevens & Sherbrook as to variance between the pleadings

and proof, the nature of the contract, and as to its provis-
ions with reference to its completion and the time of pay-
ment. The facts with reference thereto, as shown from
the evidence, do not differ materially in their probative
effect from the facts relating to the Stevens & Sherbrook
claim. What we have said in that regard as to the latter
claim applies equally here.

It is also contended, and the point was specifically made
in the objections before the master and the exceptions
before the court, that there is no evidence to sustain the
report of the commissioner that the date of the delivery of
the last material under this contract was August 8, 1896,
and that there is no evidence that the notice of claim for
lien was served by the company on Barry & Fellows within
sixty days after the last material was furnished. The con-
tention can not be maintained. The evidence shows that
the notice of lien was served on October 6, 1896, which
would be fifty-nine days from August 8, 1896, which latter
date is the one which the commissioner finds was the date
of the last delivery. We have carefully read the evidence,
consisting of the testimony of the witness Sherbrook, an
itemized statement of the account and the load tickets of
the lumber, and think that it fully supports the finding of
the master. This statement of account is certified to be
correct by Barry & Fellows, the owners, and by Stevens
& Sherbrook, the original contractors, who received the
material.

We are therefore of opinion that the objections and excep-
tions to the commissioner's report should have been over-
ruled and this claim allowed as a lien, in accordance with
the report.

CLAIM OF C. L. WEBSTER ET AL.

The commissioner, as to this claim, finds that on May 6,
1886, Barry & Fellows, as owners, made a contract in
writing with Webster & Son to furnish the material and
do the mason work on said buildings for $4,800, payments
to be made, eighty-five per cent in installments as the work
progressed, and the final payment thirty days after the

completion of the work. The contract also contains the following provision, to wit:

" The contractor shall complete the several portions and the whole of the work embodied in this agreement by and at the time or times hereinafter stated, to wit: to have the brick walls ready for the roof joists in thirty (30) days from date hereof and the balance of the work as soon as practicable thereafter."

The commissioner's report further finds, in substance, that the work was begun under said contract on May 7th, and completed July 22, 1896, and that the materials were furnished in substantial compliance with the contract and within the time mentioned therein; that they also, at the request of Barry & Fellows, furnished extra materials to the value of $8; that after deducting payments, the items of which are given, aggregating $1,524, there was a balance due of $3,284, for which amount, with interest from August 22, 1896, Webster & Son were entitled to a lien as well as for ten per cent of the amount for solicitor's fees and $5 for filing lien claim, which is found to have been filed October 12, 1896, and to be substantially in conformity to the statute; that on October 12, 1896, Webster & Son assigned all their interest in said claim for lien and contract to Frank E. Pease, trustee for certain persons named in the assignment, to whom there was due in all, including interest and solicitor's fees, the sum of $4,198.39.

It is argued for appellees that no time is fixed by the contract of Webster & Son for the completion of the work and final payment within three years from the date thereof, and therefore, under section 6 of the lien act and the construction given thereto by the Freeman and Kelly cases, *supra*, no lien can arise by virtue of the contract. We think the contention can not be sustained. As we have seen in both said Freeman and Kelly cases, no time was fixed by the contracts for the completion of the work nor furnishing the materials, nor for payment. They differ essentially from the contract here, which provides that the work should be completed as follows :

" To have the brick walls ready for the roof joists in

thirty days from date hereof and the balance of the work as soon as practicable thereafter."

The question presented by this contract is whether it fixes a time for the completion of the work. If it does, then the provision as to the time of payment, viz., that the final payment shall be made thirty days after the completion of the work, is definitely fixed.

It is well settled that in the construction of contracts, the court will endeavor to determine what was the real intention of the parties; that the contract will be construed in the light of the circumstances surrounding the parties at the time it was made, and of the purposes they had in view; and for the purpose of determining what was such intention, the acts of the parties themselves will also be considered. 1 Addison on Contracts, * p. 182 (293); 1 Chitty on Contracts (11th Am. Ed.), 103, note; 2 Parsons on Contracts (6th Ed.), 498; 1 Beach Mod. Law of Contracts, Secs. 708, 719 to 722; Street v. Chicago W. Co., 157 Ill. 605–14, and cases cited; Work v. Welsh, 160 Ill. 468–73; Curtis v. Hawley, 85 Ill. App. 429–35; Dowiat v. People, 92 Ill. App. 433–9.

In the Street case, *supra*, the court say:

"The court will, if necessary, put itself in the place of the parties and read the contract in the light of the circumstances surrounding them at the time it was made, and of the objects which they then evidently had in view. So, also, the acts of the parties themselves, indicative of the construction placed upon it, may be resorted to for the purpose of determining the true meaning of the written agreement. And in this regard it makes no difference whether such acts are contemporaneous or subsequent."

It is not necessary, in the construction of this contract, in order to maintain a lien under it, that a specific day or date should be fixed when the work was to be completed or final payment made, but only that it should appear that the time for the completion of the work should not be beyond three years from the date of the contract, and the time of final payment not beyond one year from the time stipulated for the completion of the work. Claycomb v. Cecil, 27 Ill. 497; Reed v. Boyd, 84 Ill. 66.

In both these cases the court had under consideration the lien act of 1845, which has, in the respects here under consideration, substantially the same language as the present mechanic's lien act. In the Freeman and Kelly cases, *supra*, it was held that the latter act should receive the same construction as the former. In the Claycomb case the court held that a contract was sufficient which provided that the work should be completed before cold weather in the fall of the year it was made. In the Reed case a petition for a lien, which alleged that payments were to be made in installments of ten per cent as the work progressed, and fully made when the work was completed, and that the work was to be completed in three years, without fixing a particular day for completion, was held to be sufficient, and the court say:

"The statute does not require that the particular day shall be named in the agreement to render it valid as a lien. The statute expressly provides that the time for completing the work shall not be extended for a longer period than three years, nor the time for the payment beyond the period of one year from the time stipulated for the completion thereof. * * * There was a time fixed for the payment, not a specified date, but a time within the limited period of the statute."

When the foregoing principles of construction are applied to this contract, in the light of the evidence, we are of opinion that the time for the completion of the work and the final payment is sufficiently definite to authorize a mechanic's lien, under the contract, and in view of the provisions of the statute.

The evidence shows that on the same day that the Webster contract was made, another contract was entered into between Barry & Fellows and one Ryder, from whom they purchased the real estate on which the houses were to be built, which, among other things, provided that Barry & Fellows should complete the six houses in question on or before October 1, 1896; also on the same day Barry & Fellows wrote to Stevens & Sherbrook, the carpenter contractors, as follows:

"The Vincennes Ave. contract was signed to-day. Will start excavating to-morrow A. M. Webster has the mason contract. This is to be a rush job. Six houses by September 1st."

As a matter of necessity, the mason work, which was to be done by Webster & Son, would have to be finished before the carpenter work. The mason work was done, as a matter of fact, by July 22, 1896, two months and sixteen days after the contract was made. It is also shown that to have the brick walls ready for the roof joists, which it is provided by the contract should be within thirty days from its date, was at least ninety per cent, if not ninety-five per cent, of the whole mason contract.

We are therefore of opinion that the further provision of the contract that the balance of the work should be completed as soon as practicable after the brick walls were ready for the roof joists, when construed in the light of the foregoing facts and circumstances, it is clear beyond question that it was the intention of the parties that the mason work should be done before September · 1, 1896. This construction would bring the contract within the purview of the statute and justify a lien thereunder.

We are therefore of opinion that the exceptions to the commissioner's report should not have been sustained, and that a lien should have been allowed in favor of Webster & Son and their assignees, as found and recommended by the commissioner.

CLAIMS OF EDWIN P. BAYLEY, TRUSTEE, AND OWNERS OF NOTES SECURED BY TRUST DEEDS TO HIM.

As bearing on these claims, the commissioner found, among other things not necessary to be here stated, that said Ryder agreed to sell the premises in question for $12,000 to Barry & Fellows, who in turn agreed to secure a loan thereon of $24,000, to be used in the erection of the buildings in question, said Barry to take the title and execute a mortgage to secure such loan, and then, as security, to reconvey to Ryder, subject to the incumbrances for the loan; that they would erect said buildings by October 1, 1896, and pay Ryder for the land $6,000 on or before November 1, 1896, and $6,000 on or before Novem-

ber 1, 1897; that Barry made six separate trust deeds to Bayley, dated May 11, 1896, which were recorded May 14, 1896, each securing $4,000 and interest; that the defendant Nonie Williams was the owner of the notes secured by three of the said trust deeds; that the defendants Mitchell and Haskell, as trustees, were the owners of the notes secured by another of said trust deeds; that the defendant Harriet F. Dart was the owner of the fifth trust deed and notes secured thereby, and that Sarah H. Haskell was the owner of the remaining trust deed and notes; that Barry & Fellows erected said buildings with the knowledge and permission of Ryder, and are still the owners of said real estate, subject to a conveyance to Ryder, which was absolute on its face, though a mortgage; that the money secured by said several trust deeds was paid out to Barry & Fellows between May 25th and August 18, 1896, and that said Bayley, under the terms of said trust deeds, is entitled to $1,200 as his attorney's fees, which is found to be the reasonable, usual and customary fee for the services of his solicitor in this cause, which is a lien on said premises; that on May 6, 1896, each lot of said premises was worth $2,000, and that the market value of said lots was enhanced by the said buildings the sum of $24,000 or $4,000 each; that each of said lots is subject to a lien of a separate one of said deeds of trust to Bayley of $4,000, but that the liens of the trust deeds were subject to the mechanic's liens of Rittenhouse & Embree Co., Stevens & Sherbrook, and Pease, trustee under the assignment from Webster & Son.

From an examination of the evidence, we are of the opinion that the findings of the commissioner are sustained as to these claims, and that his conclusions as to their liens are correct.

The chancellor, by the decree, fixed the commissioner's fees at $500, and apportioned the same between the several lien claimants in amounts as shown by the statement. We think, from an examination of the evidence, the commissioner's report and objection thereto, that the decree of the court as to the amount of the commissioner's fees, is supported by the evidence. We see no objection to the apportionment made by the chancellor as between the different lien claimants, but the costs apportioned to each of the appellants here should be borne by and taxed against the

defendants Barry & Fellows, and should be paid first out of the proceeds of any sale of the premises in question.

. The decree will, therefore, as against the appellants Rittenhouse & Embree Co., Stevens & Sherbrook, and the complainants in the cross-bill, be reversed, and the cause remanded, and the Circuit Court is directed to enter a decree for mechanic's liens in favor of said appellants, respectively, for the several amounts due to them, as found by the commissioner's report, and interest thereon from the date of such report, together with their costs in the Circuit Court, as apportioned by the chancellor, and their costs in this court. The decree will apportion the liens, as recommended by said report, though it shall not provide that any deficiency remaining from a sale of either of said lots or houses should be paid out of the surplus proceeds of the sale of any of the other houses and lots, but only that in case of any such deficiency or surplus the same should be reported to the court for its further order in that behalf. Reversed and remanded with directions.